2025 IL App (1st) 242327-U

FIRST DISTRICT,
SIXTH DIVISION
August 8, 2025

No. 1-24-2327

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 08 CR 11567 |
| | ) | |
| HAROLD BUTLER, | ) | Honorable |
| | ) | John F. Lyke, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm the circuit court's second-stage dismissal of defendant's postconviction petition over defendant's contentions that his 28-year sentence for attempt murder of a peace officer violated the Illinois Constitution's proportionate penalties clause and that postconviction counsel performed unreasonably by failing to amend his *pro se* petition.

¶ 2     Defendant Harold Butler appeals from the second-stage dismissal of his postconviction petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). On appeal, Butler contends his discretionary 28-year sentence for attempt first degree murder of a peace officer violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1 § 11). Alternatively, Butler argues postconviction counsel performed

unreasonably by failing to amend his *pro se* postconviction petition to adequately advance his proportionate penalties claim. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Following a jury trial, Butler was convicted of attempt first degree murder of a police officer, aggravated assault, and aggravated unlawful use of a weapon (AUUW). The circuit court sentenced Butler to 28 years' imprisonment for attempt first degree murder of a peace officer and a concurrent term of 3 years' imprisonment for AUUW. We affirmed Butler's convictions on direct appeal. *People v. Butler*, 2012 IL App (1st) 101823-U, ¶ 1. Butler subsequently filed a petition for postconviction relief under the Act, alleging actual innocence, asserting his confession was coerced, and arguing his 28-year sentence was a *de facto* life sentence and violated the proportionate penalties clause of the Illinois Constitution. The circuit court dismissed the petition at the first stage, but we remanded for further proceedings. *People v. Butler*, 2021 IL App (1st) 182637-U, ¶ 24.

¶ 5        On remand, the circuit court appointed postconviction counsel, who filed a certificate pursuant to Illinois Supreme Court Rule 651(c). The State moved again to dismiss Butler's petition at the second stage. The circuit court granted the motion to dismiss and denied Butler's motion to reconsider. Butler appeals.

¶ 6                                    A. Jury Trial

¶ 7        We discuss the facts taken from Butler's direct appeal and initial postconviction appeal only to the extent necessary to resolve the issues on appeal. See *Butler*, 2012 IL App (1st) 101823-U, ¶¶ 3-10; *Butler*, 2021 IL App (1st) 182637-U, ¶¶ 5-11.

¶ 8        The night of May 17, 2008, Butler was the passenger in a car when it was pulled over for missing a headlight. Butler immediately fled from the car and Chicago Police Officer Kevin Gleeson ran after him. Butler pulled a handgun from the front of his waistband and pointed it at

Gleeson. Gleeson heard a click of the gun but was not shot. Butler ran into an alley where Gleeson tackled him, held him on the ground, and wrenched the gun from his hand. Gleeson retrieved the gun and saw a bullet jammed inside the portal.

¶ 9     Sergeant Randall Hiller took the gun to clear it and make it safe. The top slide that places the bullet inside the barrel of the gun was stuck in a halfway position, and a bullet was lodged at an angle inside the barrel. After dislodging the bullet, Hiller noticed the cartridge had an indentation on the left side where it had been struck by the gun's hammer which fires the round from the gun.

¶ 10    Officers Thomas Lieber and Jacinta O'Driscoll transported Butler to the police station. While walking to the squad car, Butler said he "couldn't believe the gun misfired" at least six times while shaking his head. After being read his *Miranda* rights, Butler stated he had a gun on him and when the police pulled him over, he ran from the car. While running, he sensed the officer getting closer to him. Butler explained he did not want to go to jail, and he was getting tired and panicked. Butler said he pointed the gun at the officer and pulled the trigger, but the gun misfired. Butler also said he had previously fired that gun, and it had never misfired.

¶ 11    The jury found Butler guilty of attempt first degree murder of a peace officer, aggravated assault, and AUUW. The circuit court merged the aggravated assault charge with the attempt murder charge, then sentenced Butler to concurrent prison terms of 28 years for the attempt murder and 3 years for the AUUW. On direct appeal, we affirmed Butler's convictions. *Butler*, 2012 IL App (1st) 101823-U, ¶¶ 14, 22, 30.

¶ 12                             B. Postconviction Petition

¶ 13    On or about May 7, 2018, Butler filed a postconviction petition and attached various exhibits. Among other issues, the petition raises a claim that his sentence violates the proportionate penalties clause because the court did not take into account Butler's "youth, immaturity, and

potential for rehabilitation" when sentencing. The court dismissed the petition, stating that it was "frivolous and utterly without merit." Without addressing the merits of Butler's sentencing claim, we reversed the summary dismissal of the petition because the circuit court failed to examine and dismiss it within 90 days. *Butler*, 2021 IL App (1st) 182637-U, ¶ 24. The case was remanded for second-stage proceedings.

¶ 14 On remand, Assistant Public Defender (APD) William Barron represented Butler and filed a Rule 651(c) certificate. The State filed a motion to dismiss Butler's postconviction petition, which the circuit court granted. Regarding the *Miller*-based sentencing claim, the court noted that Butler was precluded from raising such a claim where he was 18 years old at the time of the offense and sentenced to 28 years, which does not qualify as a *de facto* life sentence. See *Miller v. Alabama,* 567 U.S. 460 (2012). As to his proportionate penalties claim, the court noted that Butler "does not offer support for his contention that he was the functional equivalent of a juvenile," and "fails to explain why such supporting documents are absent from the petition." Accordingly, Butler had not demonstrated that his sentence violates the proportionate penalties clause of the Illinois Constitution.

¶ 15 Butler filed a *pro se* motion to reconsider, alleging his postconviction counsel provided unreasonable assistance where he "failed to obtain evidentiary support for petitioner's proportionate penalties claim." Butler rehashed his personal background and maintained that the circuit court did not consider his youth or rehabilitative potential.

¶ 16 At the hearing on Butler's motion to reconsider, APD Barron asked the circuit court to "reconsider your ruling and instead deny the State's motion [to dismiss]." The State argued that, even if counsel had attached some evidentiary support for Butler's proportionate penalties claim, "there's no basis in law for it" and no constitutional violation. The court took the matter under advisement.

¶ 17 In the meantime, attorney Dean Morask entered an appearance on Butler's behalf. Morask argued Butler "did not really have sufficient representation to argue his position in regards to his sentence" at the initial sentencing hearing. The court again took the matter under advisement and held a final argument on the motion to reconsider. At the start of the hearing, Morask noted, "we have made all the arguments that I think are appropriate for the case." The court then denied Butler's motion to reconsider, finding no legal basis to reduce his sentence. The court reiterated that Butler was 18 years old at the time of the offense and his 28-year sentence was not a *de facto* life sentence, so *Miller* did not apply.

¶ 18                                                II. ANALYSIS

¶ 19 On appeal, Butler argues he made a substantial showing that his 28-year sentence was in violation of the proportionate penalties clause because his postconviction petition and motion to reconsider "demonstrate how, at the time of this offense, his brain was more like a juvenile than an adult." See *People v. Thompson*, 2015 IL 118151, ¶ 37 (an as-applied constitutional challenge depends on the particular facts and circumstances of an individual defendant). Alternatively, Butler contends his postconviction counsel failed to provide reasonable assistance by failing to make certain necessary amendments to his *pro se* petition to adequately present his proportionate penalties claim. We reject both arguments.

¶ 20                                      A. Proportionate Penalties

¶ 21 The Post-Conviction Hearing Act (Act) provides a means by which those under criminal sentence may assert their convictions were the result of a substantial denial of their federal or state constitutional rights. 725 ILCS 5/122-1(a) (West 2020); *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). A postconviction proceeding contains three distinct stages. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). At the first stage, the circuit court may dismiss a petition if it finds the petition is frivolous or patently without merit. *Id.* If not dismissed at the first stage, the petition advances to

the second stage. *Id.* At the second stage of proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and where, as here, the court dismissed the petition, we review *de novo* its decision. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 22 The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. As applicable here, a statute violates the proportionate penalties clause if the punishment for the offense "is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002). Punishments satisfying this standard have not been defined because, "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Id.* at 339. A court reviews "the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." *Id.* at 340.

¶ 23 Butler's petition and his opening brief make a *Miller*-based claim that, as a young adult with characteristics like those of a juvenile, his sentence is wholly disproportionate to the offense. As such, the court erred in dismissing his petition and it should proceed to an evidentiary hearing. Not so. The Illinois Supreme Court has made clear that only juveniles who receive mandatory life sentences, or *de facto* life sentences, may raise *Miller*-based eighth amendment claims in initial postconviction petitions. See *People v. Clark*, 2023 IL 127273, ¶ 72 ("The reasoning in *Miller* does not apply to discretionary life sentences under proportionate penalties clause standards where the circuit court does consider all relevant mitigating factors at sentencing and the circuit court's exercise of discretion is supported by the evidence in the record."); *People v. Hilliard*, 2023 IL 128186, ¶ 28 ("[O]ur cases were directing the possibility of as-applied proportionate penalties clause postconviction challenges to young adults who received mandatory life sentences.").

Accordingly, the reasoning in *Miller* does not apply to Butler, who was aged 18 at the time of the offense and received a discretionary, non-life sentence. *People v. Spencer,* 2025 IL 130015, ¶ 32 ("*Miller* only applies to juveniles and does not apply to emerging adults.").

¶ 24 Nonetheless, a proportionate penalties challenge is not limited to just juveniles or individuals with life sentences. *Hilliard*, 2023 IL 128186, ¶ 29. As such, because Butler was aged 18 at the time of the offense and did not receive a mandatory or *de facto* life sentence, the issue is whether his sentence overall was otherwise cruel, degrading, or so wholly disproportionate to his crime as to shock the moral sense of the community. *People v. Green-Hosey*, 2025 IL App (2d) 240284, ¶ 60. Butler maintains that it was. We disagree.

¶ 25 The circuit court could have sentenced Butler to as little as 20 years or as many as 80 years in prison. 720 ILCS 5/8-4(c)(1)(A). It sentenced Butler to a discretionary term of 28 years' imprisonment – far below a *de facto* life sentence. See *People v. Buffer*, 2019 IL 122327, ¶ 41 (defining a *de facto* life sentence for juveniles as a sentence greater than 40 years). Given the circumstances of the case and seriousness of the offense, Butler's claim that his sentence is unconstitutionally disproportionate is without merit; thus, the circuit court properly dismissed his postconviction petition. See *Hilliard*, 2023 IL 128186, ¶ 40 (court properly dismissed defendant's petition where the circumstances of the case and seriousness of the offense provided "no arguable basis in law" to conclude that the sentence was unconstitutionally disproportionate).

¶ 26 The record refutes Butler's assertion that the court failed to consider his age and troubled upbringing in sentencing. At the sentencing hearing, the court heard from witnesses and Butler himself. It heard counsels' arguments in aggravation and mitigation. The court said it reviewed the pre-sentence investigation (PSI), which listed Butler's date of birth on page one and discussed his background and upbringing. The court also considered the statutory factors in aggravation and mitigation and the facts and circumstances of the case. One of the factors was the seriousness of

the offense – attempt first degree murder – and threat of serious harm to a police officer. Had the gun not jammed, Butler could have killed the officer.

¶ 27    Even taking as true Butler's allegations about his troubling background and upbringing and how, at the time of the offense, he was more like a juvenile than an adult, there is nothing in the constitution that requires the court to give greater weight and consideration to these factors than the seriousness of the offense and facts and circumstances: Butler drawing a gun, pointing it at a police officer, pulling the trigger unprovoked, and audibly expressing disbelief that "the gun misfired" when it had never misfired before. When considering Butler's allegations in conjunction with the circumstances of the case, Butler's 28-year sentence is not cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. We affirm the second-stage dismissal of his postconviction petition.

¶ 28                      B. Unreasonable Assistance of Counsel

¶ 29    Alternatively, Butler contends he was denied reasonable assistance of counsel because counsel did not amend or supplement his *pro se* postconviction petition to "further specifically demonstrate how the recent science applied to Butler's particular circumstances," and counsel did not hire an expert or seek funds for an expert.

¶ 30    There is no constitutional right to counsel in postconviction proceedings, so a defendant is entitled only to reasonable assistance from appointed counsel. *People v. Greer*, 212 Ill. 2d 192, 204 (2004). To ensure reasonable assistance of counsel, Rule 651(c) imposes three duties on postconviction counsel. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Counsel must certify, or the record must show, that counsel (1) consulted with the defendant by phone, mail, electronic means, or in person to ascertain their contentions of constitutional deprivation; (2) examined the record of the trial proceedings; and (3) made any amendments to the *pro se* petition that are necessary to adequately present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 31 Where, as here, postconviction counsel files a certificate attesting they fulfilled the duties of Rule 651(c), we presume the defendant received reasonable assistance. See *People v. Custer*, 2019 IL 123339, ¶ 32. This presumption controls unless the defendant rebuts it. *Id.* We review *de novo* postconviction counsel's compliance with Rule 651(c). *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 32 Postconviction counsel's Rule 651(c) certificate states he consulted with Butler, reviewed the record of proceedings, examined Butler's *pro se* petition, "conducted investigations consistent with the claims in the petition," and chose not to file a supplemental petition because Butler's petition "provides an adequate presentation of [his] claims." Butler acknowledges all this, and the presumption, but still argues counsel did not provide reasonable assistance. We disagree. Butler's *pro se* petition and supporting affidavit provided a factual record to present a proportionate penalties claim. Thus, no amendment was necessary.

¶ 33 Butler attested he was 18 years old at the time of the offense. He was raised by his great-grandmother until she passed away while he was "incarcerated as a juvenile." He grew up in extreme poverty. His father was a gang member who abused drugs and was not present in Butler's life. Butler's mother was a "heavy" drug user and "never around." Butler was hit by a car when he was 13 years old, which "rattled his skull/brain," and his highest level of education was 10th grade. He was enrolled in special education classes, had a "low IQ and developmental disabilities," had difficulty paying attention and following directions, and was treated with "psychmeds" for mood swings and bad behavior. He used drugs and drank daily, was depressed, and suffered anxiety attacks. Butler also pointed to "scientific findings in neurological and psychological developments of young adults" and the "growing consensus that juveniles and young adults are alike and less culpable and have a greater potential for rehabilitation then [*sic*] fully matured adults." Butler argued he was "entitled to be resentenced to determine if his crime 'reflected transient immaturity'

or if he is the rare juvenile/young adult 'whose crime reflects irreparable corruption.' " All of this provided factual support for how Butler was more like a juvenile offender at the time of the offense.

¶ 34    We reject Butler's assertion that postconviction counsel should have amended the petition to attach the research and studies cited in Butler's *pro se* petition. The research and studies cited in the petition are readily available online. As such, counsel was not unreasonable in failing to append hard copies to the petition.

¶ 35    We also reject Butler's assertions that postconviction counsel should have hired an expert or sought funds for an expert. There is no requirement that postconviction counsel hire an expert or seek to hire an expert to provide reasonable assistance. Butler cannot simply assume some unidentified expert would have provided the evidence needed to go forward on the postconviction petition. Rule 651(c) does not oblige his postconviction counsel to go on a fishing expedition to seek out an expert to support Butler's general claim. Nor does Illinois caselaw. See *People v. Williams*, 186 Ill. 2d 55, 61 (1999) (it is not postconviction counsel's duty to seek out experts to support a petitioner's claims or to "conduct a fishing expedition" to find supporting evidence); *People v. Poole*; 2022 IL App (4th) 210347, ¶ 110 (postconviction counsel is not obligated to go on a fishing expedition to find an expert witness to support defendant's general claim); *People v. Garcia*, 405 Ill. App. 3d 608, 625 (2010) ("Defendant's allegation that postconviction counsel violated Rule 651(c) by not obtaining additional evidence, in whatever form, demonstrates a fundamental and critical misunderstanding of the scope of the rule."). While Butler cites the ABA Standards in support of his claim, Standard 4-1.1(b) makes clear the Standards are "aspirational or describe 'best practices' " and do not mandate the hiring of an expert. They simply suggest counsel consider consulting with one if appropriate, but not in every case.

¶ 36    Postconviction counsel filed a Rule 651(c) certificate, and the record shows he complied with the Rule. Counsel consulted with Butler, reviewed the record, examined Butler's *pro se*

petition, conducted investigations consistent with Butler's claims, and chose not to file a supplemental petition because the petition adequately presented them. Butler has not rebutted the presumption of reasonable assistance. We therefore affirm.

¶ 37                                    III. CONCLUSION

¶ 38        For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 39        Affirmed.